IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
              v.                  )          2:19cr144
                                  )          **Electronic Filing**
FRANKIE LEON MORRISON             )


## OPINION

On May 14, 2019, a grand jury returned an indictment against Frankie Loen Morrison ("defendant") charging him with three unlawful possession of firearm offenses. On February 14, 2022, defendant entered a guilty plea to each of the offenses: possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); possession of a firearm and/or ammunition by a fugitive of justice, in violation of 18 U.S.C. § 922(g)(2); and possession of stolen firearms and/or ammunition, in violation of 18 U.S.C. § 922(j).[1] Presently before the court is defendant's motion to withdraw that guilty plea. The motion is predicated on the failure of the court to cover during the change of plea colloquy the scienter element of the felon in possession count as amplified by Rehaif v. United States, 139 S. Ct. 2191 (2019). For the reasons set forth below, the motion will be denied.

A central component of the pretrial development of the case focused on defendant's motion to suppress the seizure of the firearms giving rise to the charges. An evidentiary hearing was held on August 28, 2021, after which the parties filed supplemental submissions on September 22, 2021, September 28, 2021, and October 12, 2021. On January 14, 2022, an

---

[1]  Each of these violations is alleged to have occurred on or about April 8, 2019.

opinion and order were issued denying the motion to suppress and the case was set for trial on Monday, January 31, 2022.  Through counsel defendant informed the court that he wanted to change his plea to guilty.  The court was advised at that time that the proceeding would be "an open plea" to all counts.  The change of plea hearing initially was commenced on February 8, 2022, but was then continued to February 14, 2022, after it came to light that the change of plea was to be conditional but counsel had not reduced that understanding to a written agreement.  As noted above, defendant entered a guilty plea on February 14, 2022, pursuant to a written conditional plea agreement which preserved his ability to appeal this court's ruling on his suppression motion.  The instant motion followed shortly thereafter.

In his *pro se* motion, defendant contends that the court did not inform him of all the required elements of the section 922(g) offenses during his change of plea colloquy.  According to defendant, this means he was not informed on the nature of the charges to which he pled guilty and therefore he could not have intelligently and knowingly entered a change of plea as required by Rule 11.  From the start, the indictment purportedly was defective because it failed to include the knowledge element as expanded by Rehaif and its omission of an element of the crime created a defect that supposedly constitutes a structural error.[2]  Defense counsel refused to seek dismissal of the indictment on this basis.  And so 1) the government misinformed defendant by omitting the missing Rehaif element from the indictment, 2) defense counsel then permitted defendant to enter into the change of plea hearing without correcting that omission, and 3) the court failed to inform defendant of the entirety of the government's burden, all of which deprived defendant of making a fully informed decision in entering his change of plea and resulted in a violation of due process.  For these reasons, the defendant maintains that his guilty plea was

---

[2]  The indictment was returned prior to the Court's decision in Rehaif.

2

entered in violation of Rule 11 and is subject to withdrawal.

The government opposes defendant's motion and highlights three aspects of the record in support of its position. First, defendant failed to raise the defect in the indictment prior to pleading guilty. Second, defendant sufficiently was informed of the required elements during his pre-plea colloquy. And third, defendant admitted to facts which proved his requisite level of knowledge under Rehaif. It further maintains that the common factors to be considered under Rule 11(d) in deciding whether a defendant has demonstrated a basis to withdraw a guilty plea counsel against permitting defendant to do so here. In other words, defendant has not asserted he actually is innocent of the charges against him, defendant's reasons for wanting to do so are specious, and the government has the potential to be prejudiced if defendant is permitted to withdraw his plea. For these reasons, the government maintains that defendant's motion should be denied.

At defendant's direction, defense counsel filed additional submissions in support of the *pro se* motion.[3] These submissions assert that defendant has demonstrated a fair and just reason for withdrawal of his guilty plea. First, the indictment is defective on multiple grounds. For example, language referencing defendant's knowledge of his status as a felon is completely missing from the indictment, rendering it defective. Thus, a motion to dismiss it can be raised at any time.

Second, defendant does assert he is innocent through the motion to withdraw because he did not admit to a sufficient factual basis during the pre-plea colloquy to permit the court to accept his guilty plea. When the court asked defendant to confirm the factual basis for the

---

[3]  Defendant was appointed new counsel after defendant's original counsel was granted leave to withdraw at a hearing on May 5, 2022.

change of plea, defendant responded: "some of [the facts] is not accurate."  Transcript of February 14, 2022, Change of Plea Hearing (Doc. 106) at p. 27, Lines 21-22.  This supposedly reflects that defendant did not agree to the factual basis as presented by the government and as a result he did not admit to the facts supporting the plea of guilty.

Third, defendant did not understand how <u>Rehaif</u> applied to his case.  During the plea colloquy, the court did not explicitly explain and confirm that the government must now prove that defendant had to know his status of being a convicted felon at the time he possessed the firearm and/or ammunition, which is required by <u>Rehaif</u>.  In other words, defendant purportedly did not have real notice of the true nature of the charges against him.  This lack of complete notice rendered his change of plea unknowing and unintelligent and the process deprived him of an ability to make an informed judgment about whether to accept the government's tendered plea bargain.  Consequently, his change of plea was entered in violation of the process mandated by Rule 11 and the record thus provides a fair and just reason for its withdrawal.

Finally, defendant argues that the government will not be prejudiced by the withdrawal because the case simply will return to the status quo existing prior to the plea and all parties can resume preparing for trial.  For all these reasons, defendant maintains that the court should permit him to withdraw his guilty plea to all three counts and the indictment should be dismissed.

The government further replies that the 2014 amendments to Rule 12 essentially recognized that the failure to raise a defect in the indictment prior to trial results in the forfeiture of the defense in the absence of a lack of jurisdiction, and an indictment that is defective for failure to reference all elements does not deprive the court of jurisdiction.  In addition, from its perspective the defendant's *pro se* filings make clear that he does not assert he was unaware of

the <u>Rehaif</u> requirement at the time he changed his plea.  To the contrary, defendant's *pro se* submissions argue only that the government and the court failed to apprise defendant of the government's burden to prove defendant knew he was within the class of individuals prohibited from possessing weapons under § 922(g).

Rule 11(d) of the Federal Rule of Criminal Procedure establishes a privilege to seek the withdrawal of a guilty plea.[4]  It provides: "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason."  Nevertheless, there is no absolute right to withdraw a guilty plea if the full protections of Rule 11 have been afforded to the defendant.  <u>United States v. Vallejo</u>, 476 F.2d 667, 669 (3d Cir. 1973); <u>United States v. Hawthorne</u>, 502 F.2d 1183, 1185-86 (3d Cir. 1974).

A defendant's privilege to withdraw a guilty plea before sentencing should be recognized "if for any reason the granting of the privilege seems fair and just."  <u>Kercheval v. United States</u>, 274 U.S. 220, 224 (1927) (emphasis added).  Evaluating such a request is committed to the sound discretion of the court.  <u>United States v. Statyton</u>, 408 F.2d 559, 561 (3d Cir. 1969).

The defendant has the burden of establishing the grounds for withdrawal.  <u>Government of Virgin Islands v. Berry</u>, 631 F.2d 214, 220 (3d Cir. 1980).  Although a more liberal standard is employed prior to sentencing, after the cloak of innocence has been voluntarily and knowingly shed the defendant has the burden of establishing sufficient reasons to explain why contradictory positions were advanced and why permission should be given to reclaim the right to trial.  <u>Id.</u>[5]

---

[4]  The content of this Rule appeared at Rule 32 of the Federal Rules of Criminal Procedure prior to the 2002 amendments.  The 2002 amendments "move[d] the substance of prior Rule 32 authorizing defendants to seek the withdrawal of a guilty plea prior to sentencing to Fed. R. Crim. P. 11(d).  Because the substance of the rule has not changed, precedent referring to Rule 32 continues to be authoritative."  <u>United States v. Wilson</u>, 429 F.3d 455, 458 n.2 (3d Cir. 2005).

[5]  "Were withdrawal automatic in every case where the defendant decided to alter his tactics and present his theory of the case to the jury, the guilty plea would become a mere jester, a temporary

Defendant's contention that the failure to cover the Rehaif element during the change of plea colloquy created a structural error and/or rendered the indictment subject to dismissal is unavailing.  To be sure, the court's colloquy for the 922(g)(1) was deficient because the *mens rea* element as expanded by Rehaif to cover a defendant's knowledge of his or her felon status was not discussed.  But such a shortcoming does not create "structural error."  Nor does the failure to allege personal knowledge of felon-status in an indictment render it subject to mandatory dismissal in violation of due process.

A due process challenge pertaining to the failure to instruct a jury and/or advise a defendant about the personal knowledge of felon-status in a § 922(g)(1) case made its way to the Supreme Court in Greer v. United States, -- U.S. --, 141 S. Ct. 2090 (2021).  There, two defendants whose indictments were returned prior to Rehaif sought relief on the grounds that the trial courts had violated their due process rights by failing to include the knowledge of felon-status element in the jury instructions/change of plea colloquy.  Rehaif was decided while their cases were on appeal.  Each defendant asserted the right to have his conviction vacated due to the failure to include Rehaif's  knowledge of felon-status element at a critical stage of the proceedings, resulting in a violation of due process.

Defendant Greer was convicted by a jury of violating § 922(g)(1).  He did not request and the district court did not give a jury instruction highlighting the government's burden to prove Greer knew he was a felon when he possessed the firearm.  Defendant Gary entered a plea of guilty to two counts of being a felon in possession of a firearm in violation of § 922(g)(1).

---

and meaningless formality reversible at the defendant's whim . . . .  A guilty plea is no such trifle but 'a grave and solemn act' which is 'accepted only with care and discernment.'"  Berry, 631 F.2d at 221 (quoting United States v. Barker, 514 F.2d 208, 221 (D.C. Cir.) (*en banc*), cert. denied, 421 U.S. 1013 (1975)).

During the plea colloquy, the district court did not advise Gary that the government would have to prove, and a jury would have to find, that Gary knew he was a felon when he possessed the firearms.  Gary admitted he was a felon when he pled guilty.

Neither defendant objected to the failure to address the *mens rea* element when the error occurred.  Notwithstanding the uniform circuit precedent rejecting the contention that the "knowing" element of § 922(g)(1) extended to a defendant's knowledge of his felon status, both Greer and Gary had the "opportunity" to object at the time the adverse ruling was made and thus "both defendants forfeited their *mens rea* claims by failing to properly preserve them under Rule 51(b)."  Greer, 141 S. Ct. at 2096.  Their claims of error were thus governed by the "plaint-error review under Rule 52(b)."  Id.  Under plain error review, a defendant must satisfy three threshold requirements: 1) there was an error; 2) the error was plain; and 3) the error must have affected "'substantial rights,' which generally means that there must be 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'"  Id. (quoting Rosales-Mireles v. United States, 585 U.S. ——, —— – ——, 138 S. Ct. 1897, 1904–1905 (2018)).  "If those three requirements are met, an appellate court may grant relief if it concludes that the error had a serious effect on 'the fairness, integrity or public reputation of judicial proceedings.'"  Id. at 2096-97.

The parties agreed that Rehaif errors had occurred in the district court proceedings and those errors were plain.  Thus, the question was whether those errors affected the defendants' substantial rights.  Id. at 2097.  This translated into the following burdens:

> Greer has the burden of showing that, if the District Court had correctly instructed the jury on the *mens rea* element of a felon-in-possession offense, there is a "reasonable probability" that he would have been acquitted.  . . .  And Gary has the burden of showing that, if the District Court had correctly advised him of the *mens rea* element of the offense, there is a "reasonable probability" that he would not have pled guilty.

Id.

In conducting its analysis, the Court observed:

In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. "Felony status is simply not the kind of thing that one forgets." 963 F.3d 420, 423 (CA4 2020) (Wilkinson, J., concurring in denial of reh'g *en banc*). That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant knew he was a felon based on the fact that he was a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty. In short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a "reasonable probability" that, but for the Rehaif error, the outcome of the district court proceedings would have been different.

Id. at 2097. This is not to say that there will not be those rare cases where a defendant can make a showing that he or she did not know of his or her felon status at the time of possession. Id. But if such argument and/or evidence is not advanced, a reviewing court has "no reason to believe that the defendant would have presented such evidence to a jury, and thus no basis to conclude that there is a 'reasonable probability' that the outcome would have been different absent the Rehaif error." Id.

Neither Greer nor Gary were able to meet their burden of showing the error affected their substantial rights. They did not dispute the existence of their prior convictions for multiple felonies. And neither made a representation that "they would have presented evidence at trial that they did not in fact know they were felons when they possessed firearms." Id. at 2098. The inability to advance such a representation was fatal to their contention that the Rehaif error had affected their substantial rights. Id. ("Therefore, Greer cannot show that, but for the Rehaif error in the jury instructions, there is a reasonable probability that a jury would have acquitted him. And Gary likewise cannot show that, but for the Rehaif error during the plea colloquy, there is a

reasonable probability that he would have gone to trial rather than plead guilty.").

In arguing that the Rehaif error provided sufficient grounds for relief, Greer argued that the appellate court's review was limited to the trial record and not the entire record in the district court (which included the presentence investigation report generated after the jury's verdict). The Court rejected the argument on the grounds that it contravened "both logic and precedent." Id. at 2098.  Logically, if Greer had advanced the proposition that he was unaware of his felon status, it would be unsound to reason that the government would not have introduced the evidence it had available to refute the defense, i.e., his multiple felony convictions.  Id.  And the Court's precedent mandated that any relevant and reliable information from the entire record can be considered in assessing an unpreserved claim of error under Rehaif.

Gary argued that his claim was not subject to plain-error review for two basic reasons. First, every circuit to consider the matter "had held that knowledge of one's felon status was not an element of the felon-in-possession offense" at the time he changed his plea, which would have rendered the objection futile under a narrow exception to Rule 52(b)'s exacting plain error standard.  Second, he argued that Rehaif errors occurring during a plea colloquy are "structural" in nature and require vacatur in every case without regard to whether a defendant can demonstrate that substantial rights were affected.  The Court held that each of these arguments were unavailing.

Consistent with the text of Rules 51 and 52, the Court's prior "precedents have long drawn a bright line between harmless-error and plain-error review based on preservation."  Id. at 2099 (citations omitted).  All that matters is that a defendant had a cotemporaneous opportunity to object at the time the error occurred and failed to do so.  In other words, "unpreserved Rehaif claims are subject to plain-error review under Rule 52(b)."  Id.

The Court also squarely rejected the contention that a <u>Rehaif</u> error constitutes a "structural error."[6]  Indeed, the Court's precedent already had recognized that "discrete defects in the criminal process - such as the omission of a single element from jury instructions or the omission of a required warning from a Rule 11 plea colloquy - are not structural because they do not 'necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'"  <u>Id.</u> at 2100 (citing <u>Neder v. United States</u>, 527 U.S. 1, 9 (1999)).  And it follows *a fortiori* "that a <u>Rehaif</u> error in a plea colloquy is likewise not structural."  <u>Id.</u>  This is because

> [t]he omission of that *mens rea* element from a plea colloquy—like the omission of that *mens rea* element from jury instructions—does not affect the entire framework within which the proceeding occurs.  <u>See</u> [<u>Neder</u>,] 527 U.S. at 8 . . . .  And unlike the errors that this Court has found structural, the omission of a single element from a plea colloquy does not 'deprive defendants of basic protections without which a criminal [proceeding] cannot reliably serve its function as a vehicle for determination of guilt or innocence.'"

<u>Id.</u> (quoting <u>Neder</u>, 527 U.S. at 8–9) (citation omitted).

Instead, <u>Rehaif</u> errors "fit comfortably within the 'general rule' that a constitutional error does not automatically require reversal of a conviction."  <u>Id.</u>  This leaves a defendant who has failed to preserve a <u>Rehaif</u> error with the burden of showing that but for the <u>Rehaif</u> error, there is a reasonable probability that the outcome would have been different.  And meeting that burden in a change-of-plea context requires at least some evidence from which a sufficient argument can be made that the defendant "did not in fact know he was a felon."  <u>Id.</u> at 2100.

Here, defendant "bears [the] substantial burden of showing a fair and just reason for the

---

[6]  "Structural errors are errors that affect the 'entire conduct of the [proceeding] from beginning to end.'"  Id. at 2100 (citations omitted).  This class of "highly exceptional" errors include, for example, the "denial of counsel of choice, denial of self-representation, denial of a public trial, and failure to convey to a jury that guilt must be proved beyond a reasonable doubt."  <u>Id.</u> (quoting <u>United States v. Davila</u>, 569 U.S. 597, 611 (2013)).

withdrawal of his plea." United States v. Rivera, 62 F.4th 778, 788 (3d Cir. 2023) (quoting

United States v. Siddons, 660 F.3d 699, 703 (3d Cir. 2011) (internal quotation marks and citation

omitted); accord Government of Virgin Islands v. Berry, 631 F.2d 214, 220 (3d Cir. 1980).  That

burden is to present a probable showing that had he been correctly advised of the Rehaif

knowledge of felon-status element, he would have elected to forego the plea agreement and

proceed to trial.  He does not have to advance a probable showing that a jury probably would

have acquitted him based on the substance of that proffered showing.  Cf. United States v.

Hayward, 42 F.4th 460, 466 (4th Cir. 2022) ("because the decision whether to plead guilty always

belongs to the defendant, see, e.g., Florida v. Nixon, 543 U.S. 175, 187 . . . (2004), to obtain

relief for a "Rehaif error during [a] plea colloquy," a defendant must demonstrate "a reasonable

probability that"—had he been correctly advised—"he would have gone to trial rather than plead

guilty," Greer, 141 S. Ct. at 2098, without taking on the added burden of establishing that he

probably would have been acquitted at trial.").

      Common factors which should be considered in evaluating defendant's request are: (1)

whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for

withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal.

Rivera, 62 F.4th at 788 (quoting United States v. Jones, 979 F.2d 317, 318 (3d Cir. 1992) (citing

United States v. Huff, 873 F.2d 709, 712 (3d Cir. 1989)).

      As noted above, defendant asserts his innocence in the following manner: because he was

not apprised of the Rehaif element requiring the government to prove his knowledge of his felon

status at the time of the possession, he did not make a fully informed decision about whether to

change his plea.  This made his plea uninformed and rendered the change of plea invalid and

subject to withdraw.

Tellingly, defendant does not assert that he is innocent by operation of the Rehaif element.  In other words, he does not advance a colorable, let alone a plausible, showing that the government would be unable to meet its obligation to prove defendant's knowledge of felon status beyond a reasonable doubt.

The likely reason for this is apparent.  A petition on an alleged violation of supervised release was filed against defendant in this court at United States v. Frank Leon Morrison at criminal number 2:19cr98 on April 11, 2019, and thereafter assigned to this member of the court. This pending petition was filed prior to the grand jury's return of the indictment in the instant case at 2:19cr144.  The petition is based on the same course of conduct as the instant case, *i.e.*, the same alleged possession of firearms on April 8, 2019.  The petition charges that this conduct violated the five year term of supervised release imposed in United States v. Frank Leon Morrison, at criminal number 2:06cr17 in the United States District Court for the Eastern District of Kentucky.  In that case defendant was sentenced on October 26, 2006, to 63 months for Bank Robbery in violation of 18 U.S.C. §§ 2113(a) and 60 months for Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1), with the two terms of incarceration to run consecutively for a total term on 123 months.  Thus, defendant had been sentenced to two separate sentences of five years or more in Kentucky, making it extraordinarily difficult to maintain that he did not have knowledge that he was a felon on April 8, 2019.

Defendant also made clear that he was fully aware that he had other convictions for which he served time.  During the change of plea colloquy, the government's proffered factual basis included a summary of defendant's criminal history:  "defendant has six cases, two federal and four state cases, where he was previously convicted of felony charges, a total of 11 different felony charges, as well as four involving illegal firearms in possession and five or more where he

12

was actually sentenced to more than one year in prison." (Guilty Plea Transcript, Doc. No. 106, Page 27, Lines 7-13). Indeed, the indictment in the instant case referenced a number of these other cases: a 1995 conviction in the United States District Court for the Eastern District of Michigan at 93-80793 for "Felon in Possession of a Firearm, and two counts of Use of Unauthorized Device Access;" a 1993 conviction "in the Connecticut Superior Court of Attempted Larceny and Failure to Appear;" and a 1987 conviction in the Court of Common Pleas of Allegheny County, Pennsylvania for Receiving Stolen Property. Indictment (Doc. No. 3) at 1.

Defendant's conviction in 1995 for felon in possession has an equally compelling impact on defendant's ability to avail himself of a "lack of knowledge of felon status" defense. Having been convicted of that very crime in a federal court, it would take more than a Herculean effort to disavow that on April 8, 2019, defendant failed to appreciate that he belonged to the class of individuals who are prohibited from possessing weapons under 18 U.S.C. § 922(g)(1).

Finally, defendant acknowledged during the plea colloquy that he knew he was not permitted to possess firearms at the time of the charged unlawful possession. After the government recited the summary of the defendant's criminal history as recounted above, the court asked defendant to confirm the accuracy of the government's summary as it related to him and his conduct. Defendant responded that some of the facts were not accurate and then explained why. First, he clarified that the government's recitation of his criminal record was inaccurate. Instead of eleven convictions, he only has three: he was convicted in 1987, in 1996, and in 2006. And he further clarified that even after the instant indictment the total number of convictions would be four, which is still lower than eleven.[7] Second, contrary to the

---

[7] The government appears to have been referencing counts of conviction while defendant appears to have been referencing the number of criminal cases.

government's description of his status in Connecticut, defendant explained that he was not an "escapee." He nevertheless admitted that he "owed" time in Connecticut and he would have to return to that jurisdiction and serve a few months to get the matter cleared up.

Notwithstanding defendant's clarifications, defendant did not advance any challenge or explanation that suggested he was confused about his felon status. To the contrary, he acknowledged his awareness of this status when he contested the number of felony convictions but did not challenge his felon status *per se*. Indeed, defendant admitted: "I know I messed up (…) And actually the facts of the case is what he talking about is actually true. But my hands never touched anything [*i.e.*, the guns] that was in that vehicle." (Guilty Plea Transcript, Page 29, Lines 9-12). Defendant's clarifications merely confirm what his criminal record reveals – that defendant does not have a credible basis to claim he lacked knowledge of his felon status on April 11, 2019.

It is settled that "bald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea [and] [a]ssertions of innocence must be buttressed by facts in the record that support a claimed defense." Jones, 336 F.3d at 252-53 (quoting Brown, 250 F.3d at 818 and United States v. Salgado–Ocampo, 159 F.3d 322, 326 (7th Cir. 1998)). This is because a defendant who has pleaded guilty "must then not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." Jones, 336 F.3d 245 (quoting Jones, 979 F.2d at 318).

It follows that assertions of "innocence" based on a proffer that falls woefully short of plausibly presenting a basis for a finding of factual innocence likewise do not provide sufficient support for the withdrawal of a guilty plea. That is all defendant has advanced here. As grounds

for his withdrawal, he relies solely on the court's failure to inform him about the government's burden to prove his knowledge of felon status.  He does not proffer any colorable basis to support an ultimate finding that on April 8, 2019, he was unaware that he belonged to the class of individuals who are prohibited from possessing a firearm under section 922(g)(1).  An assertion of "legal" innocence based on a failure in the plea colloquy to advise a defendant of Rehaif's knowledge of felon status element that is not buttressed by facts seeking to mount a plausible defense based on the government's inability to meet that expanded element is insufficient.  Consequently, the first factor in analyzing defendant's motion to withdraw his plea does not support the requested relief.

Defendant's reasons for withdrawing his plea suffer from similar shortcomings.  Defendant does not seek to regain the right to a jury trial to advance a defense based on Rehaif's knowledge of felon status element.  To the contrary, he seeks to regain the ability to defend on the ground that he never touched the guns in the trunk of the car he was driving on April 8, 2019.  Instead, he purportedly was just a jitney driver for two other individuals whom he had dropped off just before he was stopped and it was these individuals who had actually stolen the handguns recovered in the vehicle.  (Guilty Plea Transcript, Page 29, Lines 12-13).

Defendant's attempt to reclaim the right to a jury trial falls short for three basic reasons.  First, the proffered defense has nothing to do with the Rehaif element missing from the plea colloquy.  In other words, defendant does not seek to prove there was a bonified question about whether he understood he was a convicted felon on the night of the offenses.  To the contrary, his defense is unrelated to the presence or lack of proof to establish the Rehaif element.

Second, the defense defendant does seek to advance was one that was available to him long before the change of plea hearing and/or the changes that Rehaif introduced to the legal

framework governing a § 922(g)(1) charge.  In other words, the defense defendant seeks to resurrect was one that was available to him from the beginning of the case.

Third, defendant was aware of his defense and had discussed it with counsel prior to the change of plea hearing.  After defendant made the comment that his hands never touched anything in the vehicle that night and there were "two other individuals who paid me to drop them off and pick them up," defense counsel interjected: "Frankie, the question here is do you admit to those facts.  I don't want you going into your defense of this case.  All right?"  (Guilty Plea Transcript, Page 29, Lines 14-16).  Thus, defendant seeks to reclaim the right to a jury trial to advance a defense that he clearly had discussed with counsel prior to the entry of his guilty plea.

It is well settled that "[t]he defendant 'bears a substantial burden of showing a fair and just reason for the withdrawal of his plea.'"  Rivera, 62 F.4th at 788 (citing United States v. Siddons, 660 F.3d 699, 703 (3d Cir. 2011)).  And "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty."  Id. (quoting Jones, 336 F.3d at 252).

Here, defendant seeks to use the omission of the Rehaif element to regain the right to trial for the purpose of presenting a defense which he was aware of from the beginning of the case. He discussed this defense with counsel prior to changing his plea and made a conscious choice to relinquish the defense in exchange for the benefit of the plea agreement and the changes brought about by entering his guilty plea.  In other words, his "reasons" for withdrawing his guilty plea amount to nothing more than a shift in tactics and a change of mind.  It follows that this factor also weighs against the relief defendant seeks.

The government advances concerns about prejudice from the passage of time and the fading of memories if it is required to revert to preparing for and trying defendant at this juncture. Defendant retorts that the government cannot be prejudiced by having to meet its original burden of proving the elements of its case to a jury.

While the government's concerns do not present an immediate and concrete showing of prejudice, they are legitimate considerations here. Defendant seeks to have the government bear the expense of preparing for trial and trying defendant for the purpose of defeating a defense that defendant knowingly and intelligently relinquished. Defendant has failed to assert his innocence by operation of a Rehaif error and his reasons for reclaiming the right to trial focus solely on a consciously relinquished defense. Under these circumstances, the government need not show actual prejudice to defeat a motion to withdraw a guilty plea. See Rivera, 62 F.4th at 788 ("Even if Rivera was correct, which he is not, 'the Government need not show such prejudice when a defendant has failed to demonstrate that the other factors support a withdrawal of the plea.'") (quoting Jones, 336 F.3d at 255).

Each of the traditional factors considered in evaluating a motion to withdraw a guilty plea weigh against permitting defendant to withdraw his guilty plea here. It follows that under this framework defendant's motion to withdraw guilty plea is unavailing.

Moreover, the other arguments advanced by defendant are equally misplaced. First, the contention that the Rehaif error that occurred here constitutes "structural error" has to be rejected. The Supreme Court considered and rejected this very contention in Greer and expressly held that such errors "fit comfortably within the 'general rule' that a constitutional error does not automatically require reversal of a conviction." Greer, 141 S. Ct. at 2100. Thus, this ground does not provide any support for defendant's position.

Second, defendant's assertion that his change of plea hearing amounts to a fundamental denial of due process equally lacks persuasive support.  The Court in <u>Greer</u> considered and rejected this argument pursuant to a Rule 52 "plain error" analysis in both a jury trial and change of plea setting.  In each scenario the Court held that the lack of an ability to mount a defense based on <u>Rehaif</u>'s expanded knowledge of felon status element had a significant impact on the ability to obtain relief.  And here, the traditional factors considered in analyzing a motion to withdraw guilty plea all support the proposition that defendant was not prejudiced in any material way by the omission of the <u>Rehaif</u> element during the change of plea colloquy.  It follows that defendant's invocation of a due process violation is unpersuasive.

But even setting aside the teachings of <u>Greer</u> as they relate to the instant context, defendant's contention that a fundamental denial of due process has occurred is meritless.  In <u>United States v. Sewell</u>, 1:16-CR-88-HAB, 2020 U.S. Dist. LEXIS 9824, 2020 WL 336703 (N.D. Ind. Jan. 17, 2020), Judge Holly A. Brady considered a due process challenge under substantially similar circumstances and reached the same conclusion.  There, like the situations presented in <u>Greer</u> and in the instant case, an indictment charging the defendant with a § 922(g)(1) offense was returned prior to the issuance of <u>Rehaif</u>.  As a result, it did not contain the expanded knowledge of felon status element introduced by <u>Rehaif</u>.  The defendant had pled guilty and was awaiting sentencing when <u>Rehaif</u> was issued.

The defendant in <u>Sewell</u> filed a motion to withdraw guilty plea.  <u>Sewell</u>, 2020 WL 336703 at *1.  In response, the government maintained that in the pre-plea colloquy the defendant admitted "he was aware that he had previously been convicted of felony offenses [and] that he knew that he was prohibited from possessing a firearm."  <u>Id.</u>  The defendant had admitted to these facts during the colloquy after the government referenced evidence in the

factual basis that when these admissions were first made to law enforcement, his statements were recorded.  Id. at *2.  In reply, the defendant maintained that those aspects of the colloquy did not matter because the essential point was that his guilty plea was not knowingly entered because he "did not know the government was required to prove to both the grand jury and to a trial jury that he knew he was a felon at the time he possessed the weapon in question."  Id.

The Sewell court began its analysis by observing that "[d]efects in an indictment do not deprive a district court of jurisdiction over the case."  Id. (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)).  Furthermore, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  Id. (quoting Lefkowitz v. Newsome, 420 U.S. 283, 288 (1975) and Tollett v. Henderson, 411 U.S. 258, 267 (1973) and citing Gomez v. Berge, 434 F.3d 940, 942 (7th Cir. 2006) ("[A]n unconditional plea of guilty operates as a waiver of all formal defects in the proceedings . . . that occurred before the plea was entered.")).

Notwithstanding these bedrock principles, a defect in a Rule 11 colloquy can give rise to a due process violation that provides a fair and just reason for withdrawing a guilty plea; examples include a scenarios where the defendant does not validly waive a constitutionally protected privilege or intentionally relinquish or abandon a known right.  Id. (citing McCarthy v. United States, 394 U.S. 459, 466 (1969) (explaining that a defendant who enters guilty plea waives the privilege against compulsory self-incrimination, the right to trial by jury and the right to confront his accusers, and for this waiver to be valid under the Due Process Clause it must be an intentional relinquishment or abandonment of a known right or privilege)).  In this regard,

if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void.  Moreover, because a guilty plea is an

admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

Id. (quoting McCarthy, 394 U.S. at 466) (footnote omitted).  With these principles in mind, Judge Brady turned to the requirements of Rule 11 and the record before her to determine whether the defendant had a sufficient understanding of the nature of the § 922(g)(1) charge to waive or relinquish any defect created by the issuance of Rehaif.

In analyzing whether a defendant had a sufficient understanding of the charge to which he has pled guilty pursuant to Rule 11, the Sewell court employed the familiar "'totality of circumstances' approach to determine if a defendant understood the true nature of the charge to which he admitted guilt." Id. at *3.  Relevant factors for consideration include (1) the complexity of the charge; (2) the defendant's level of intelligence, age, and education;  (3) whether the defendant was represented by counsel; (4) the district judge's inquiry during the plea hearing and the defendant's own statements; and (5) the evidence proffered by the government. Id.

In assessing these factors, the court observed:

Most of these factors are not particularly relevant to the Defendant's plea and the Motion to Withdraw now pending before the Court.  The factors are intended to aid in determining whether a defendant was fully aware of the nature of the crime that he was pleading guilty to.  Here, there is no dispute that one of the essential elements of Count 4 was not communicated, as the Supreme Court had not yet decided Rahaif when Defendant entered his plea.  Thus, it matters not that a § 922(g)(1) charge is, normally, not complex in nature, or that Defendant was represented by counsel.  What seems more pertinent in this case is that the evidence proffered by the Government, and admitted by Defendant, satisfied the unexpressed scienter element.  Thus, to the extent some portion of the "nature" of the crime was not fully appreciated by the parties, it did not fundamentally alter the proceedings or Defendant's understanding of the unlawfulness of his conduct.

Id.  The court then focused on "whether the scienter element is one that might have changed the calculus Defendant used to plead guilty." Id.

Three aspects of the record convinced the Sewell court that the defendant had not been

deprived of due process in violation of Rule 11.  First, the defendant had a criminal history that included three sentences of more than one year of imprisonment for serious felony offenses.  Id.  Had he gone to trial and not stipulated to these offenses, the government would have been able to introduce evidence of all three of these convictions to prove the defendant's knowledge of his felon status.  And tellingly, the defendant did not mount a challenge to his status or advance a factual proffer to suggest he was confused about his felon status.  Id.

Second, the defendant had made recorded statements to law enforcement indicating he was aware that he had been convicted of felony offenses and that he knew he was prohibited from possessing a firearm.  Id. at 6.  And third, the defendant had received valuable consideration pursuant to the bargained-for plea agreement.  The agreement included a reduction for acceptance of responsibility, which was in sharp contrast to the exposure the defendant faced if convicted at trial.  Id. at 4.

Notwithstanding that the defendant was not apprised of the expanded knowledge element under Rehaif, the Sewell court concluded that a due process violation sufficient to permit relief under Rule 11 had not occurred.   Two aspects of the record provided sound support for this assessment.  First, "the requisite conduct - possession of a firearm even though he knew he was a convicted felon - was discussed and established before the Court accepted his plea of guilty."  Second, after review of the entire record, "it [was] difficult to imagine that Defendant would have assessed his strategic position differently based merely on the recitation of the additional element.  His case [was] not one where the 'likelihood of acquittal - and by extension [his] willingness to plead guilty - shifted substantially after Rahaif."  Id.  (citing United States v. Williams, No. 19-1358, 2020 WL 111264, at *4 (7th Cir. Jan. 10, 2020) (applying plain error standard of review to request to withdraw guilty plea on direct appeal); see also id. at *5

21

(explaining that because defendant had not explained how <u>Rehaif</u> has made going to trial a less foolish choice than it was when he entered his guilty plea, "his only other option is to explain why <u>Rehaif</u> has made him choose more foolishly")).

Here, defendant's due process challenge comes up short for similar reasons. Defendant's criminal record reflects sentences for multiple felony convictions, included recent sentences of 63 months for bank robbery and a consecutive 60 month sentence for carrying a firearm in relation to a crime of violence. He also has a prior conviction for felon in possession of a firearm. In conducting any analysis about defendant's awareness of his felon status and his decision to relinquish his right to proceed to trial, the government's ability to introduce evidence to prove that on April 8, 2019, defendant was a convicted felon who had received two five year sentences for two serious crimes and that on that date he already had previously been convicted of unlawfully possessing a firearm based on his felon status cannot be questioned.

Furthermore, defendant does not seek to reclaim the right to trial for the purpose of presenting a defense based on the government's inability to prove that he knew he was within the class of individuals prohibited from possessing weapons. To the contrary, he seeks to pursue a defense that he discussed with his lawyer prior to changing his plea and knowingly relinquished as part of that process.

Third, the critical conduct forming the basis for a § 922(g)(1) offense was thoroughly discussed at the change of plea hearing and defendant neither disputed that he had prior felony convictions nor disputed that he "owed" time in Connecticut. And he made statements indicating that on April 8, 2019, he was well aware that he was not permitted to possess a firearm as a result of his criminal history.

In short, defendant has failed to reference anything that demonstrates that a discussion of

Rehaif's knowledge of felon status element would have given him reservations about changing his plea.  After a review of the entire record, it is virtually impossible to believe that explicit verification of the government's need to prove this element would have produced a difference in defendant's decision about whether to accept responsibility for the offenses and the benefits of the plea agreement or proceed to trial.  The only credible assessment is that he had a change of heart after he made that critical decision.  Given these circumstances, defendant has not demonstrated that the deficiency in the process impacted his rights in a way that would have produced a different outcome.  Consequently, his due process challenges to the indictment, the Rule 11 process and the content of the change of plea hearing fail.

For the reasons set forth above, defendant's motion to withdraw his guilty plea does not set forth a fair and just reason warranting relief and it will be denied.  An appropriate order will follow.

Date: July 21, 2023

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:    Ross E. Lenhardt, AUSA
       D. Robert Marion, Jr., Esquire

       (*Via CM/ECF Electronic Mail*)